In the
# United States Court of Appeals
## for the Fifth Circuit

No. 24-30307

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

BRENNAN JAMES COMEAUX,

*Defendant - Appellant*

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 6:23-CR-183-1

## REPLY BRIEF FOR THE APPELLANT
## BRENNAN JAMES COMEAUX

**REBECCA L. HUDSMITH**
Federal Public Defender

**DUSTIN C. TALBOT**
Appellate Chief
Federal Public Defender's Office
Middle and Western Districts of
Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

*Attorney for the Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES .................................................. iv

RE-STATEMENT OF THE ISSUES ....................................... 1

1. Is 26 U.S.C. § 5861(d), which prohibits the personal possession of silencers that are not registered with the Treasury, facially unconstitutional under the Second Amendment?

2. Is 26 U.S.C. § 5861(d), which prohibits the personal possession of silencers that are not registered with the Treasury, unconstitutional as-applied to a gun collector who made five homemade silencers to protect his hearing and make his self-defense actions more effective and who only possessed those silencers in his rural personal residence?

REPLY ARGUMENT ............................................................ 2

I.  The government cannot simultaneously treat silencers as "firearms" for prosecution but not for constitutional protection ........................................................................ 3

II. Silencers are "Arms" protected by the Second Amendment ...... 3

    A.  Silencers fall within the historical understanding of "Arms" ................................................................. 3

    B.  Silencers are essential components that enhance lawful self-defense ......................................................... 4

    C.  This Court should join other Circuits in holding that the Second Amendment extends to items that enhance the use of a firearm for self-defense ......................................... 6

**III.   The government's historical analysis fails to justify 26 U.S.C. § 5861(d)'s regulation of silencers** ............................................ 10

    A.   Post-ratification evidence cannot save an unconstitutional law ...................................................... 10

    B.   Silencers are neither "dangerous" nor "unusual" ............ 13

        1.   Silencers are not "dangerous" ..................................... 14

        2.   Silencers are not "unusual" ........................................ 15

    C.   Commerce-based historical analogues are inapposite ..... 15

**IV.   26 U.S.C. § 5861(d)'s prohibition on possession of unregistered silencers violates the Second Amendment as-applied to Comeaux, an avid gun collector who possessed homemade silencers at his rural residence for self-defense** ....................... 17

    A.   The standard of review for Comeaux's as-applied claim is *de novo* ......................................................... 17

    B.   The Second Amendment's core protection extends to Comeaux's in-home possession of the silencers in this case ................................................................................ 19

        1.   This case involves purely in-home possession of firearms ....................................................................... 20

        2.   The firearms were possessed for a lawful defensive purpose ........................................................................ 20

    C.   The government mischaracterizes the record .................. 21

    D.   The government fails to offer any historical regulation that would prohibit a private citizen, like Comeaux, from possessing a homemade firearm only in his private home for self-defense ....................................................... 23

CONCLUSION ......................................................................... 25

CERTIFICATE OF SERVICE ................................................ 26

CERTIFICATE OF COMPLIANCE ....................................... 26

# TABLE OF AUTHORITIES

**CASES**                                                                                            **PAGE**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*, 910 F.3d 106 (3rd Cir. 2018) .................................................................. 8

*Bucklew v. Precythe*, 587 U.S. 119 (2019) ............................................. 19

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ............. 19

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................... *passim*

*Elgin v. Department of Treasury*, 567 U.S. 1 (2012) .............................. 19

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) .......................... 7-8

*Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503 (5th Cir. 2019) ......................................................................................... 18

*Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ......................................................................................... 8

*Kolbe v. Hogan*, 813 F.3d 160 (4th Cir. 2016), *vacated on reh'g en banc on other grounds*, 849 F.3d 114 (4th Cir. 2017)............................. 10

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) ........................................................................................ *passim*

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023)................................... 9-10

*Teixeira v. Cnty. of Alameda*, 873 F.3d 670 (9th Cir. 2017).................... 8

*United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018).......................... 6-7

*United States v. Rahimi,* 61 F.4th 443 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023), *and rev'd and remanded*, 144 S. Ct. 1889 (2024) ................................................................................................ 18

*United States v. Rahimi*, 144 S. Ct. 1889 (2024) ........................... 9, 18-19

*Wilson v. Cook County*, 937 F.3d 1028 (7th Cir. 2019) ........................ 7, 9

## STATUTES, REGULATIONS, & CONGRESSIONAL RECORDS

U.S. Const. amend. II ("Second Amendment") .............................. *passim*

18 U.S.C. § 922(g)(8) .................................................................. 18-19

26 U.S.C. § 5861(d) ................................................................. *passim*

*National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73rd Cong. 1, 111 (1934) .................................. 12

*To Regulate Commerce in Firearms: Hearings on S. 855, S. 2258, and S. 3680 Before a S. Comm. on Commerce*, 73rd Cong. (1934) ....... 12

Second Amendment Protection Act, ch. 100, 2013 Kan. Sess. Laws vol. 1 500-03 (codified at Kan. Stat. Ann. §§ 50-1201 to -1211 (2014) ... 7

## OTHER SOURCES

Justin Stevens, *Reloading the Second Amendment: The Undue Burdens of the National Firearms Act and Their Remedies*, 49 Tex. Tech L. Rev. Online Edition 149 (2017) ................................. 14

Oliver Krawczyk, *Dangerous and Unusual: How an Expanding National Firearms Act Will Spell Its Own Demise*, 127 Dick. L. Rev. 273 (2022) .......................................................................... 15

Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 33 (2016) ...................................................................................... 11

In the
United States Court of Appeals
for the Fifth Circuit

No. 24-30307

UNITED STATES OF AMERICA,
*Plaintiff - Appellee,*

v.

BRENNAN JAMES COMEAUX,
*Defendant - Appellant*

Appeal from the United States District Court
For the Western District of Louisiana
USDC No. 6:23-CR-183-1

## REPLY BRIEF FOR THE APPELLANT
## BRENNAN JAMES COMEAUX

## RE-STATEMENT OF THE ISSUES

1. Is 26 U.S.C. § 5861(d), which prohibits the personal possession of silencers that are not registered with the Treasury, facially unconstitutional under the Second Amendment?

2. Is 26 U.S.C. § 5861(d), which prohibits the personal possession of silencers that are not registered with the Treasury,

1

unconstitutional as-applied to a gun collector who made five homemade silencers to protect his hearing and make his self-defense actions more effective and who only possessed those silencers in his rural personal residence?

## REPLY ARGUMENT

The government's case rests on a fundamental contradiction that demonstrates the weakness of its position: It convicted and imprisoned appellant Brennan James Comeaux for possessing "firearms" – specifically unregistered silencers – under 26 U.S.C. § 5861(d), but now argues those same silencers are not "Arms" protected by the Second Amendment. The government cannot have it both ways. Beyond this fatal inconsistency, the government's arguments fail for three additional reasons: (1) silencers are "Arms" under any reasonable interpretation of the Second Amendment's text and history, (2) the government's historical evidence consists almost entirely of irrelevant post-ratification regulations, and (3) even if some applications of § 5861(d) might be constitutional, its application to purely in-home possession of homemade silencers for lawful purposes violates the Second Amendment's core protection.

I.    **The government cannot simultaneously treat silencers as "firearms" for prosecution but not for constitutional protection**

The government's primary argument – that silencers fall entirely outside Second Amendment protection – collapses under the weight of its own contradictions. Gov't Br. at 11-19. To obtain Comeaux's conviction, the government specifically alleged that his homemade silencers were "firearms" under 26 U.S.C. § 5861(d). ROA.79. Indeed, proving the silencers were "firearms" was an essential statutory element of the offense. ROA.143. Having secured Comeaux's conviction and imprisonment on this basis, the government now argues those same silencers are mere "accessories" unworthy of constitutional protection. Gov't Br. at 12-13. This Court should reject such transparent inconsistency.

II.    **Silencers are "Arms" protected by the Second Amendment**

A.    **Silencers fall within the historical understanding of "Arms"**

Even setting aside the government's contradictory positions, silencers qualify as "Arms" under any reasonable interpretation of the Second Amendment's text and history. The Supreme Court has explained that the term "Arms" encompasses "[w]eapons of offence, or armour of defence" or "any thing that a man wears for his defence, or takes into his

hands, or useth in wrath to cast at or strike another." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008) (citations omitted). To bear arms, in sum, means to "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." *Id.* at 584 (ellipses in original). A silencer is an integral part of a firearm's function – the projectile must pass through it – making it part of the weapon's core mechanism for "cast[ing] at or strik[ing] another." *Id.* at 581.

**B.    Silencers are essential components that enhance lawful self-defense**

Silencers serve critical functions that make firearms both safer and more effective for their core lawful purpose – self-defense. Silencers promote safety by protecting hearing from permanent damage, reducing disorienting effects of gunfire, decreasing harmful muzzle blast, and lowering risk of injury to innocent bystanders. *See* Appellant's Opening Br. at 20-24 (discussing in detail, with citations, the safety benefits of a silencer to the user). Silencers also promote self-defense by improving accuracy through reduced recoil, allowing better situational awareness, enabling more effective defensive use, and prevent temporary

disorientation after firing. *See* Appellant's Opening Br. at 20-24 (discussing in detail, with citations, the benefits of a silencer for effective defense). These benefits of using a silencer are not contested by the government, likely because they are based upon decades of research and analysis from groups such as the Department of Defense, the Center for Disease Control, the World Health Organization, and the Nation Hearing Conservations Association, among others reputable groups. *See* Appellant's Opening Br. at 20-24 (providing citations).

The government doesn't refute any of this evidence and only suggests ear protection is an adequate substitute. Gov't Br. at 15-16. This argument fails because silencers provide superior protection and additional benefits beyond mere hearing protection. The government's argument also ignores that a sudden in-home self-defense situation might not allow time for the victim to equip ear protection, and any ear protection would also mute environmental sounds necessary to mount an adequate defense.

C.   **This Court should join other Circuits in holding that the Second Amendment extends to items that enhance the use of a firearm for self-defense**

Nothing in *Heller* or its progeny suggests Second Amendment protection extends only to "necessary" components rather than those that enhance the effective exercise of the right. Numerous Circuits – including the Third, Fourth, Seventh, and Ninth Circuits – have held that the Second Amendment necessarily extends to items that enhance the effective exercise of the right.

But the government cites to the Tenth Circuit's pre-*Bruen* decision in *Cox* for support of its argument that silencers deserve no Second Amendment protection. *See* Gov't Br. at 12-13 (citing to *United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018)). This Court must decline to follow the Tenth Circuit because *Cox* was decided using the now-rejected means-end scrutiny, its decision largely focused on a unique Kansas state law, and its holding is inconsistent with numerous other Circuit decisions on the scope of the Second Amendment's protections.

In *Cox*, an army-surplus store in Kansas was selling unregistered homemade silencers. *Id.* at 1175. Shane Cox, the owner of the store, was indicted for selling unregistered firearms. He moved to dismiss the

indictment alleging that Kansas's Second Amendment Protection Act[1] shielded him from federal liability and that he was entrapped by relying on the Kansas law. *Id.* at 1176. Those motions were denied, and he was convicted at trial. *Id.* at 1177. In a pre-*Bruen* decision, the Tenth Circuit applied means-end scrutiny and affirmed Cox's convictions holding that "[a] silencer is a firearm accessory; it's not a weapon in itself." *Id.* at 1186.

This Court must decline to follow the pre-*Bruen* means-end scrutiny decision in *Cox* because its decision is "inconsistent with *Heller*'s historical approach and its rejection of means-end scrutiny." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). Instead, this Court should look to the growing Circuit consensus that the Second Amendment extends to items that enhance the use of a firearm for self-defense. The Seventh Circuit has recognized that the Second Amendment extends to "corollar[ies] to the meaningful exercise of the core right to possess firearms for self-defense." *Wilson v. Cook County*, 937 F.3d 1028, 1032 (7th Cir. 2019) (internal citations omitted); *see also Ezell v. City of*

---

[1] Kansas's Second Amendment Protection Act, ch. 100, 2013 Kan. Sess. Laws vol. 1 500-03 (codified at Kan. Stat. Ann. §§ 50-1201 to -1211 (2014)), purports to exempt any personal firearm, firearm accessory, or ammunition manufactured, owned, and remaining within Kansas's borders from "any federal law, ... including any federal firearm or ammunition registration program, under the authority of congress to regulate interstate commerce." Kan. Stat. Ann. § 50-1204(a).

*Chicago*, 651 F.3d 684, 691-92 (7th Cir. 2011) (Seventh Circuit holding that the Second Amendment protects the right to use a shooting range because "[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."). The Third Circuit also recognized the importance of this corollary and found that "a magazine is an arm under the Second Amendment" because it was "an implement that goes into the weapon to increase the capacity of the weapon itself." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*, 910 F.3d 106, 116 (3rd Cir. 2018). The Ninth Circuit has held that "the Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense" *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017), and that an ordinance that banned the sale—but not possession—of certain bullets infringed upon a gun owner's Second Amendment rights because "the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them." *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014).

As each of these Circuit decisions show, the Second Amendment is not "trapped in amber." *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024). The Second Amendment encompasses items that are corollaries to the meaningful exercise of the core right to possess firearms for self-defense *Wilson*, 937 F.3d at 1032. These principles compel the conclusion that silencers are "Arms" within the meaning of the Second Amendment as they improve the safety and efficacy of lawful firearms use. Silencers serve critical functions in making firearms safer and more effective for lawful purposes including self-defense. They protect hearing, reduce recoil, improve accuracy, and prevent disorientation – all of which make the firearm more useable for its intended purpose. *See* Appellant's Opening Br. at 20-24.

The Second Amendment protects the right to keep and bear arms in an effective manner, not just a minimally functional one. This Court should hold that silencers deserve Second Amendment protection because they "improve a pistol's stability, and thus a user's accuracy," which "in turn, promotes safety." *Mock v. Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (J. Willett, concurring). This Court should join the other Circuits and affirm that "protected Second Amendment 'conduct' likely

includes making common, safety-improving modifications to otherwise lawfully bearable arm." *Id.*; *see also Kolbe v. Hogan*, 813 F.3d 160, 175 (4th Cir. 2016), *vacated on reh'g en banc on other grounds*, 849 F.3d 114 (4th Cir. 2017) (The Fourth Circuit has also adopted this view in finding that "'arms' should be read to protect all those items necessary to use the weapons effectively.").

## III. The government's historical analysis fails to justify 26 U.S.C. § 5861(d)'s regulation of silencers

The government's attempt to justify § 5861(d) based on historical tradition fails on multiple levels: (1) the government relies primarily on post-ratification evidence in violation of *Bruen*, (2) silencers are neither dangerous nor unusual, and (3) commerce-based historical analogues are inapposite.

### A. Post-ratification evidence cannot save an unconstitutional law

The government's historical defense of § 5861(d) rests almost entirely on twentieth-century regulations enacted after silencers were invented. Gov't Br. at 28-33. This approach fundamentally misunderstands *Bruen*'s historical analysis requirement. The Supreme Court has made clear that "when it comes to interpreting the

Constitution, not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them.*'" *Bruen*, 597 U.S. at 4 (quoting *Heller*, 554 U.S. at 599) (emphasis original). Post-ratification history cannot overcome this core principle.

First, the Supreme Court in *Bruen* expressly declined to "address any of the 20th-century historical evidence brought to bear by respondents" because it did "not provide insight the meaning of the Second Amendment when it contradicts earlier evidence." 597 U.S. at 66 n.28.

Second, the government identifies no founding-era analogues requiring registration of privately manufactured firearms or components.

Third, even the post-ratification evidence the government cites undermines its position. Especially considering that when Congress passed the NFA regulating silencers, not a single mention was made about criminal misuse of a silencer. *See* Stephen P. Halbrook, *Firearm Sound Moderators: Issues of Criminalization and the Second Amendment*, 46 Cumb. L. Rev. 33, 49-50 (2016) (The 1934 NFA "hearings closed without a single reference to any incident of the criminal misuse

of a muffler or silencer, and the only reference to one in a negative light being Rep. Fuller's offhand inclusion[2] of them with firearms being carried for an unlawful purpose. The hearing record amounted to 166 pages.") (citing to *National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73rd Cong. 1, 111 (1934)); *See also To Regulate Commerce in Firearms: Hearings on S. 855, S. 2258, and S. 3680 Before a S. Comm. on Commerce*, 73rd Cong. (1934) (same).

As the government admits, even at the height of silencer regulation, less than half of all jurisdictions even regulated silencers at all. *See* Gov't Br. at 26 (acknowledging that in 1940 only 24 jurisdictions even

---

[2] The government cites to this offhand comment in its brief. Gov't Br. at 29. Rep. Fuller's entire comment is reproduced here:

> **Mr. FULLER.** I think the operation of the law should be more severe on the man who carries the sawed-off shotgun or machine gun than on the man who carries merely a pistol.
> **General RECKORD.** We are willing to go as far as the committee wishes to go on that.
> **Mr. FULLER.** If a man is carrying that type of weapon, if he is not an officer, he ought to be taken into custody anyway, because we know that he is carrying it for an unlawful purpose; I am referring to such a weapon as a sawed-off shotgun or machine gun, or a silencer.
> **General RECKORD.** We agree with that.
> **Mr. FULLER.** We cannot compare those with a pistol.

*National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73rd Cong. 1, 111 (1934). In the entirety of the hearings before and after this comment, silencers are never the subject of discussion.

regulated silencers). And presently, possession and ownership of silencers is currently legal in 42 states.[3]

The modern regulation of firearms relied upon by the government shows only dwindling regulation of silencers in the face of empirical evidence of their safety and law-abiding functions – hardly "a *tradition* of broadly prohibiting" conduct in the manner of the challenged restriction. *Bruen*, 597 U.S. at 38 (emphasis added). The government has only shown that 26 U.S.C. § 5861(d) is a modern outlier and violates the Second Amendment.

## B.   Silencers are neither "dangerous" nor "unusual"

The government also argues that there is a historical tradition of restricting dangerous and unusual weapons, and that history supports § 5861(d)'s regulation of silencers. Gov't Br. at 22-28. The government's attempt to justify § 5861(d) under the "dangerous and unusual weapons" doctrine fails because silencers are demonstrably neither dangerous nor unusual.

---

[3] *See* American Suppressor Association, *Education,* available at https://americansuppressorassociation.com/education (last accessed August 30, 2024) (Of the states where silencers are legal, only Connecticut prohibits hunting with a silencer).

### 1.    Silencers are not "dangerous"

Silencers are not dangerous. Just the opposite, silencers make firearm use safer and more effective. In a self-defense situation, silencers enhance safety by protecting hearing, reducing the risk of injury from muzzle blast, improving accuracy through reduced recoil, and allowing better situational awareness in defensive situations. *See* Appellant's Opening Br. at 20-24; s*ee generally* Justin Stevens, *Reloading the Second Amendment: The Undue Burdens of the National Firearms Act and Their Remedies*, 49 Tex. Tech L. Rev. Online Edition 149, 164 (2017). "[T]he national consensus is that firearm suppressors are not a threat to society worth heavily regulating." *Id.* at 175.

The government's response – citing a handful of century-old newspaper articles about criminal misuse – cannot overcome the overwhelming empirical evidence showing silencers' safety benefits. *See* Gov't Br. at 28 (citing to early Twentieth Century New York Times articles); Gov't Br. at 30 (citing to an Associated Press article). Anecdotes are not data. The government's own data shows how silencers are almost never used in crimes. *See* Appellant's Opening Br. at 28-31 (providing empirical data from the ATF and other sources showing silencers are

rarely used in crimes and are not more dangerous than regular firearms.).

### 2. Silencers are not "unusual"

Second, silencers are not unusual. "With millions of suppressors already registered and a vibrant, streamlined marketplace in existence, suppressors are becoming ubiquitous in modern firearm ownership." Oliver Krawczyk, *Dangerous and Unusual: How an Expanding National Firearms Act Will Spell Its Own Demise*, 127 Dick. L. Rev. 273, 298-99 (2022) (citations omitted). Possession and ownership of silencers is currently legal in 42 states.[4] In 2021, there were over 2.6 million registered silencers in America. *Id.*

### C. Commerce-based historical analogues are inapposite

The government's attempt to justify § 5861(d) based on historical regulation of commercial arms sales fails because this case involves purely private manufacture and possession. Gov't Br. at 33-37. The government's argument should be easily rejected because § 5861(d) does not regulate commerce in any way; it does not prohibit selling a silencer,

---

[4] *See* American Suppressor Association, *Education,* available at https://americansuppressorassociation.com/education (last accessed August 30, 2024) (Of the states where silencers are legal, only Connecticut prohibits hunting with a silencer).

only the receipt or possession a silencer. A law-abiding gun collector, like Comeaux, violates § 5861(d) if he uses an empty recycled plastic bottle to create a homemade silencer in the privacy of his own home. No commerce necessary. Perhaps the historical tradition of regulating commerce concerning firearms would be relevantly similar to a modern restriction on the selling and distribution of silencers, *see* § 5861(a), but that is not what § 5861(d) prohibits. Such laws are not "relevantly similar."

The government cites specifically to state laws from the 1830s and 1840s that imposed taxes on knives, pistols, and similar weapons. Gov't Br. at 35. But each of these laws imposed taxes on *commerce*, that is the selling, bartering, transporting, exporting, or vending of weapons. Again, § 5861(d) does not regulate commerce. Indeed, Comeaux made his own silencers in this case and never attempted to sell, trade, or dispose of them. The government identifies no founding-era analogue for requiring registration of firearms or components made for personal use.

**IV.  26 U.S.C. § 5861(d)'s prohibition on possession of unregistered silencers violates the Second Amendment as-applied to Comeaux, an avid gun collector who possessed homemade silencers at his rural residence for self-defense**

**A.  The standard of review for Comeaux's as-applied claim is *de novo***

The government argues that Comeaux forfeited his as-applied challenge below. Gov't Br. at 38-40. Not so. Comeaux clearly raised an as-applied challenge below:

> Mr. Comeaux alleges that these statutes violate the Second Amendment on their face and as applied to him as that right has been interpreted by the United States Supreme Court in New York State Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111 (June 23, 2022).

ROA.31 (emphasis added). In the motion, Comeaux argued that 26 U.S.C. § 5861(d) and (i) violated the Second Amendment as-applied to someone who "is not a prohibited person prevented from possessing firearms under federal or state law" and who "built his own firearm suppressors, five in total, and did not register them or identify them by serial number as required by federal law." ROA.31. Comeaux specifically raised an as-applied challenge and discussed the facts in support of that challenge.

This is in contrast to raising only a facial challenge which "considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503, 508 (5th Cir. 2019) (cleaned up).

Therefore, Comeaux did not forfeit his as-applied challenge. But alternatively, this Court need look no further than *Rahimi* to reach the as-applied claim in this case. In *Rahimi*, the Supreme Court considered an as-applied challenge — without plain error review — to 18 U.S.C. § 922(g)(8) even though the defendant had only raised a facial challenge to the statute.

In *Rahimi*, the defendant *only* raised a facial challenge to 18 U.S.C. § 922(g)(8). *United States v. Rahimi*, 61 F.4th 443, 448 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023), *and rev'd and remanded*, 144 S. Ct. 1889 (2024) ("Zackey Rahimi levies a facial challenge to § 922(g)(8)."). This Court considered the facial challenge and declared § 922(g)(8) unconstitutional *Id.* at 461. The Supreme Court granted certiorari and reversed in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). The Supreme Court acknowledged that the defendant in *Rahimi* only raised a facial challenge to § 922(g)(8). *Id.* at 1896. The Supreme Court, nevertheless,

analyzed the constitutionality of § 922(g)(8) "[a]s applied to the facts of this case." *Id.* at 1896-97; *see also id.* at 1898 ("And here the provision is constitutional as-applied to the facts of Rahimi's own case."); *id.* at 1902 ("Section 922(g)(8)'s restriction was temporary as-applied to Rahimi."); *id.* at 1903 (Stating again that "Section 922(g)(8) is constitutional as-applied to Rahimi."). The Supreme Court's decision is understandable because it has recognized that "[t]he line between facial and as-applied challenges can sometimes prove 'amorphous,' and "not so well defined." *Bucklew v. Precythe*, 587 U.S. 119, 139 (2019) (quoting *Elgin v. Department of Treasury*, 567 U.S. 1, 15 (2012), and *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

Unlike the defendant in *Rahimi*, Comeaux actually raised both a facial and as-applied challenge below, so his as-applied claim is preserved. But in any event, this Court should reach the as-applied claim under the precedent set by the Supreme Court in *Rahimi.*

## B.    The Second Amendment's core protection extends to Comeaux's in-home possession of the silencers in this case

The Supreme Court has consistently recognized that Second Amendment protection is "most acute" in the home. *See Heller*, 554 U.S. at 628. This case involves precisely such core protected conduct.

19

### 1.     This case involves purely in-home possession of firearms

This case involves Comeaux's purely in-home possession of the silencers. The silencers at the heart of this case were manufactured by Comeaux in his private residence. ROA.151-52. There is no evidence that the silencers were ever removed from his residence after they were manufactured. *See* ROA.150 (the silencers were seized by officers from Comeaux's rural residence). Comeaux made the silencers for his own personal use for self-defense, not for any commercial purpose. And there was no evidence of criminal use of the silencers.[5]

### 2.     The firearms were possessed for a lawful defensive purpose

The record establishes that Comeaux possessed the silencers solely for lawful defensive purposes within his home. When questioned by law enforcement, Comeaux explained that he needed the silencers "for protection from his neighbors" who had been repeatedly harassing him and vandalizing his property. ROA.151-52. This defensive purpose aligns precisely with the core Second Amendment right recognized in *Heller* – the right to possess arms for self-defense in the home. 554 U.S. at 628.

---

[5] It should be noted that Comeaux's conduct of discharging a firearm in self-defense to scare aware his terrorizing neighbors *did not involve a silencer.* ROA.150-51.

The silencers enhanced this legitimate defensive purpose in several crucial ways. They protected Comeaux's hearing in the event he needed to discharge a firearm in self-defense within his home, where the confined space would amplify the harmful acoustic effects. They also improved his ability to defend himself effectively by reducing recoil and preventing the disorientation that often follows an unsilenced discharge. Perhaps most importantly, the silencers would have reduced the risk to other family members present during a defensive encounter by minimizing the harmful noise and muzzle blast. Notably absent from the record is any evidence suggesting Comeaux intended to use the silencers for any purpose other than lawful self-defense. The government's attempt to paint this as threatening conduct ignores both the record and the Second Amendment's core protection of in-home defensive arms.

### C.    The government mischaracterizes the record

The government's sole argument that 26 U.S.C. § 5861(d) and (i) is constitutional as-applied to Comeaux is their belief that he "posed a clear threat of violence" to his neighbors and "possessed silencers for the unlawful purpose of assaulting his neighbors." Gov't Br. at 41. The government's attempt to paint Comeaux as a threat fundamentally

mischaracterizes the record and ignores the defensive context of his actions.

The evidence shows nothing more than a property dispute between neighbors, with Comeaux exercising lawful defensive rights on his own property. The record establishes that Comeaux was responding to an ongoing pattern of harassment – his neighbors repeatedly trespassed on his property, vandalized his vehicles, killed his grass with weed killer, and put cooking oil in his equipment. ROA.150-52. His neighbors' primary complaint was simply that Comeaux, a firearms enthusiast, would exercise his right to shoot guns on his private property. ROA.150-52.

The single incident the government relies upon – where Comeaux fired a warning shot – demonstrates restraint rather than aggression. When questioned about this incident, Comeaux explained to officers that he discharged the firearm only to scare away his neighbor who was, once again, harassing him on his private property. ROA.150-51. Notably, Comeaux told officers that he felt his firearms were "the only self-defense that he had against his neighbors." ROA.152. This statement, which the

government attempts to twist into evidence of threatening behavior, actually reinforces the defensive nature of Comeaux's conduct.

Most significantly, there is no evidence that Comeaux ever used or even brandished his homemade silencers during any confrontation. The silencers remained in his personal residence at all times, serving their intended purpose as safety devices for potential defensive use. ROA.151-52.

Comeaux had no criminal history of violence, no protective orders against him, and no judicial findings that he posed any danger. The record shows only that Comeaux, consistent with the core purpose of the Second Amendment, possessed firearms and related safety equipment for self-defense in his home. His conduct was protected under the Second Amendment and the current prosecution against him is unconstitutional as-applied.

**D.    The government fails to offer any historical regulation that would prohibit a private citizen, like Comeaux, from possessing a homemade firearm only in his private home for self-defense**

In their as-applied argument, the government never engages in their real burden under *Bruen*. The government has proffered no historical regulation that would prohibit a private citizen like Comeaux

from possessing a homemade firearm only in his own home for self-defense. There are no historical regulations prohibiting the personal in-home possession of a firearm that serves to improve the safety of Comeaux's other firearms and increase the effectiveness of their use in a self-defense situation. Nor are there any historical regulations prohibiting the personal in-home possession of a type of firearm whose possession was ubiquitous with firearm ownership in the United States.

Even if some applications of § 5861(d) might be constitutional, its application to purely private possession of homemade silencers in the home violates the Second Amendment's core protection of the right to keep arms for self-defense. The government identifies no historical tradition of restricting what lawful arms someone could possess in their own home. This case involves the precise conduct the Second Amendment was meant to protect – keeping arms (including their components and accessories) in the home for lawful self-defense.

## CONCLUSION

For the foregoing reasons, appellant Brennan James Comeaux respectfully requests that the Court vacate his conviction and sentence.

Respectfully submitted,

REBECCA L. HUDSMITH
Federal Public Defender

BY: *s/ Dustin C. Talbot*
         DUSTIN C. TALBOT
         Appellate Chief
         Federal Public Defender's Office
         Middle and Western Districts of Louisiana
         102 Versailles Boulevard, Suite 816
         Lafayette, Louisiana 70501
         Telephone: (337) 262-6336

         *Attorney for the Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing has this day been served by the 5th Circuit electronic filing system on the Assistant United States Attorney, on November 21, 2024.

<u>*s/Dustin C. Talbot*</u>
DUSTIN C. TALBOT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,417 words.

2. This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century typeface with a 14 point font.

Lafayette, Louisiana, November 21, 2024.

<u>*s/Dustin C. Talbot*</u>
DUSTIN C. TALBOT