No. 24-30307

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,
Plaintiff–Appellee,

v.

BRENNAN JAMES COMEAUX,
Defendant–Appellant.

———————————————

On Appeal from the United States District Court for the
Western District of Louisiana, No. 6:23-CR-183
(Hon. David Cleveland Joseph)

———————————————

## UNITED STATES' RESPONSE TO PETITION
## FOR REHEARING EN BANC

———————————————

ZACHARY A. KELLER
United States Attorney

CAMILLE ANN DOMINGUE
Assistant United States Attorney
Western District of Louisiana

A. TYSEN DUVA
Assistant Attorney General

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

WILLIAM A. GLASER
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave, NW, Ste. 1264
Washington, DC 20530
(202) 532-4495
William.Glaser@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ........................................................................................... 1

ISSUE PRESENTED ...................................................................................... 1

STATEMENT OF THE CASE ........................................................................ 2

      A.     Relevant Facts ........................................................................ 2

      B.     Course Of Proceedings .......................................................... 2

      C.     Panel Decision ....................................................................... 3

ARGUMENT .................................................................................................. 4

I.     The Panel's Decision Is Consistent with *Bruen* and *Diaz*....................... 4

      A.     *Peterson* properly relied on *Bruen*'s footnote 9. .............................. 5

      B.     *Peterson* does not conflict with *Diaz*. ............................................. 7

      C.     Properly understood, *Peterson* does not relieve the
              government of its burden at *Bruen*'s second step. ......................... 9

II.    Section 5861(d)'s Registration Requirement Is Constitutional
       Under a Full Historical Analysis. ...................................................... 11

III.   The Panel's Decision Does Not Conflict with Decisions of Other
       Circuits ............................................................................................. 15

IV.   This Case Is a Poor Vehicle for Further Review ................................. 16

CONCLUSION ............................................................................................. 18

CERTIFICATE OF COMPLIANCE ............................................................. 19

**Cases**

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ........................................................................ 8, 12

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011) ............................................................ 13

*Hollis v. Lynch*,
827 F.3d 436 (5th Cir. 2016), *abrogated on other grounds by*
*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024)...................................... 7

*Maryland Shall Issue, Inc. v. Moore*,
116 F.4th 211 (4th Cir. 2024) ............................................................. 16

*McRorey v. Garland*,
99 F.4th 831 (5th Cir. 2024) ............................................................... 6

*New York State Rifle & Pistol Assn., Inc. v. Bruen*,
597 U.S. 1 (2022).............................................3, 5, 6, 7, 9, 10, 11, 12, 14, 15

*United States v. Comeaux*,
179 F.4th 297 (5th Cir. 2026) ............................................ 1, 3, 4, 10, 11, 17

*United States v. Cox*,
906 F.3d 1170 (10th Cir. 2018) ............................................................ 16

*United States v. DeBorba*,
177 F.4th 1005 (9th Cir. 2026)............................................................. 15

*United States v. Diaz*,
116 F.4th 458 (5th Cir. 2024) ..........................................................4, 7, 8

*United States v. Hemani*,
608 U.S. ---, 2026 WL 1751710 (2026)...................................................... 9

*United States v. Miller*,
No. 24-3254, 2025 WL 1012727 (6th Cir. Mar. 31, 2025) ................................. 16

*United States v. Peterson*,
 161 F.4th 331 (5th Cir. 2025), *cert denied*,
 2026 WL 1052030 (Apr. 20, 2026)................................. 1, 3, 6, 8, 10, 13, 17

*United States v. Rahimi*,
 602 U.S. 680 (2024) ..............................................................9, 13, 15

*United States v. Schieferle*,
 No. 23-11792, 2024 WL 1905326 (11th Cir. May 1, 2024)....................... 16

*United States v. Speed*,
 175 F.4th 272 (4th Cir. 2026) ................................................... 16

*United States v. Wilson*,
 164 F.4th 380 (5th Cir. 2026) ................................................... 18

*Wolford v. Lopez*,
 609 U.S. ---, 2026 WL 1825723 (2026)........................................9

**Statutes and Rules**

18 U.S.C. § 922................................................................... 15

26 U.S.C. § 5811 (1976)........................................................ 12

26 U.S.C. § 5812................................................................. 12

26 U.S.C. § 5822................................................................. 12

26 U.S.C. § 5841 ................................................................ 11

26 U.S.C. § 5861 ............................................................. 1, 2

Fed. R. App. P. 40 ............................................................. 16

Pub. L. No. 119-21, 139 Stat. 72 (2025)..................................... 12

**Historical Statutes**

Act of Dec. 9, 1882, 1882 Ga. Laws 37 ...................................... 13

Act of Feb. 10, 1838, 1838 Fla. Laws 36...................................... 12

Act of Feb. 6, 1841, 1841 Miss. Laws 52 ..................................... 12

Act of Jan. 28, 1851, 1851 N.C. Laws 243..................................................... 12

Act of June 30, 1837, 1837 Ala. Laws (Called Session) 7 ............................. 12

Act of March 2, 1854, 1854 Miss. Laws 50................................................... 13

Act of March 27, 1876, 1875-1876 Va. Laws 164......................................... 13

Act of May 17, 1886, 1886 Ky. Laws 154..................................................... 13

**Other Authorities**

Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Current Processing Times*, Form 4 Individual ......................................................... 14

Connecticut Office of Legislative Research, *Gun Permit and License Fees* ........ 14

David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. Legis. 223 (2024) ............................................... 12

Silencer Central, *How Much Does a Suppressor Cost?*........................................ 14

## INTRODUCTION

A unanimous panel of this Court correctly held that 26 U.S.C. § 5861(d)'s prohibition on possession of an unregistered silencer complies with the Second Amendment. Relying on *United States v. Peterson*, 161 F.4th 331 (5th Cir. 2025), *cert denied*, 2026 WL 1052030 (Apr. 20, 2026), the panel held that the National Firearm Act's (NFA's) taxation and registration requirement is a presumptively lawful "shall issue" regime and that Comeaux had not shown it was "put toward abusive ends" or involved "exorbitant fees" or "lengthy wait times." *United States v. Comeaux*, 179 F.4th 297, 302 (5th Cir. 2026) (quotation omitted). The panel's holding was correct, and Comeaux's criticism of its analytical path is not a basis for en banc review. Comeaux could not prevail under the full historical analysis that he advocates. The panel decision is consistent with the decisions of the other circuits to consider the question. And this case is a poor vehicle for review. This Court denied rehearing en banc in *Peterson*, *see* Doc. 197-2, No. 24-30043 (5th Cir. Dec. 9, 2025), and it should do the same here.

## ISSUE PRESENTED

Whether the federal prohibition on possession of an unregistered silencer, 26 U.S.C. § 5861(d), violates the Second Amendment on its face or as applied to Comeaux.

# STATEMENT OF THE CASE

## A. Relevant Facts

In May and June 2022, Iberia Parish sheriff's deputies were twice called to Comeaux's residence based on reports that he was shooting guns and yelling at his neighbors. ROA.150. Comeaux admitted to firing guns to scare his neighbors. ROA.150. Deputies arrested Comeaux and searched his house, finding multiple firearms, silencers and parts for assembling silencers, a manual describing how to convert a semi-automatic AR-15 to a fully automatic weapon, and a dry-erase board bearing the words, "If you live on the west side of me you need to die today . . . because you are to [sic] fucking noise [sic] punk, and your bitch." ROA.150-51. Comeaux admitted that he made and possessed the silencers. ROA.151-52. And he told deputies that he almost put a bullet in his neighbor, whom he claimed had used a thermal camera on him that made him sleep. ROA.151-52.

## B. Course Of Proceedings

A grand jury charged Comeaux with possession of an unregistered silencer, in violation of 26 U.S.C. § 5861(d), and possession of a firearm without a serial number, in violation of 26 U.S.C. § 5861(i). ROA.9-10. He moved to dismiss the indictment, arguing that the statutes violated the Second Amendment. ROA.29-38. After the district court denied his motion,

Comeaux conditionally pleaded guilty to the unregistered-silencer count, preserving his right to raise a Second Amendment challenge on appeal. ROA.104, 111. The district court sentenced Comeaux to 24 months of imprisonment. ROA.83, 126.

### C.  Panel Decision

A panel of this Court affirmed. *Comeaux*, 179 F.4th at 297. The panel first held that silencers are "Arms" covered by the Second Amendment because they "*facilitate* armed self-defense." *Id.* at 302 (quotation omitted). But it held that Comeaux's challenge failed under *Peterson*, 161 F.4th 331, which "requires a challenger to the NFA's shall-issue silencer-registration regime show that the system has been put toward abusive ends through exorbitant fees or lengthy wait times in processing license applications," *Comeaux*, 179 F.4th at 302 (quotations omitted). Like the defendant in *Peterson*, Comeaux failed to "rebut the presumption" that the NFA was constitutional. *Id.*

Judge Clement concurred, joined by Judge Duncan. 179 F.4th at 302-04. In her view, *Peterson* wrongly relied on footnote 9 of *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022), to "establish the presumptive constitutionality of shall-issue licensing regimes." 179 F.4th at 303. In Judge Clement's view, *Peterson* "stripped this [C]ourt of its ability to independently

conduct a history and tradition inquiry" by requiring Comeaux to "rebut the *presumption* that the NFA's shall-issue regime is lawful." *Id.* "*Peterson*'s pronouncement of this half-step," Judge Clement said, "is incompatible with *Bruen*'s two-step method" and "resurrects a repudiated form of interest-balancing." *Id.* at 304.

## ARGUMENT

This Court should deny Comeaux's petition for rehearing en banc. The panel correctly held, as did *Peterson*, that § 5861(d) complies with the Second Amendment. Even if *Peterson* should have conducted a full historical analysis, rather than relying on the Supreme Court's statements in *Bruen*, it reached the correct result. So Comeaux could not prevail even under his preferred analysis. The result in this case is consistent with the decisions of other circuits. And, in any event, this case would be a poor vehicle for further review.

## I. The Panel's Decision Is Consistent with *Bruen* and *Diaz*.

Contrary to Comeaux's contention (Pet. 8-13), *Peterson* does not conflict with *Bruen* or with this Court's decision in *United States v. Diaz*, 116 F.4th 458, 466 (5th Cir. 2024).

**A.** *Peterson* **properly relied on** *Bruen***'s footnote 9.**

Contrary to Comeaux's contention, *Peterson* did not misread footnote 9 of *Bruen*. Pet. 8, 11. *Bruen* invalidated a New York law that required an applicant to show a "special need for self-defense" to obtain a license to carry a handgun in public. *Bruen*, 597 U.S. at 11. *Bruen* contrasted New York's "may issue" licensing law, "under which authorities ha[d] discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria," with the "shall issue" laws that existed in 43 states, under which licensing officials had no "discretion to deny concealed-carry licenses" from statutorily qualified individuals "based on a perceived lack of need or suitability." *Id.* at 13-14.

*Bruen* explained that a proper Second Amendment analysis focuses on "text and history" and does not involve means-end scrutiny or an "interest-balancing inquiry." *Bruen*, 597 U.S. at 22 (quotation omitted). Instead, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 24. "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* That inquiry involves examining "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 29. After considering a

5

wide range of historical sources, *Bruen* held that New York's may-issue license-to-carry regime was unconstitutional because it was inconsistent with the "American tradition" of firearm regulation. *Id.* at 69-70.

In footnote 9, *Bruen* made clear that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Bruen*, 597 U.S. at 38 n.9. Those "shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens." *Id.* (quotation omitted). But "because any permitting scheme can be put toward abusive ends," the Court said, "we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id.*

Relying on *Bruen*'s footnote 9, this Court in *Peterson* held that the NFA's shall-issue registration regime for silencers is "presumptively constitutional." *Peterson*, 161 F.4th at 339; *see McRorey v. Garland*, 99 F.4th 831, 837-39 (5th Cir. 2024) (holding that "ancillary" regulations like those requiring background checks are "presumptively lawful").

Comeaux contends that *Bruen*'s "[f]ootnote 9 is dictum" and "cannot bear the weight *Peterson* placed on it." Pet. 9. But this Court is "generally bound by Supreme Court dicta, especially when it is recent and detailed." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (quotation omitted), *abrogated on other grounds by Diaz*, 116 F.4th at 458. And *Bruen*'s footnote 9 is at least unusually persuasive dictum—if not more akin to a holding. If *all* license-to-carry regimes were unconstitutional, *Bruen* could have simply invalidated New York's law on the basis that it required a license to carry a handgun; but the Court limited its holding to may-issue schemes. Moreover, the Court's wide-ranging historical inquiry surveyed all laws related to public carry, not just those similar to may-issue schemes. *Bruen*, 597 U.S. at 39-70. Given this context, when the Court said it would "not rule out constitutional challenges" to shall-issue schemes with "lengthy wait times" or "exorbitant fees," *id.* at 38 n.9, it implicitly ruled out challenges to schemes that lack those features. *Peterson* and the panel decision faithfully applied footnote 9 of *Bruen* to uphold the NFA's registration requirement, which Comeaux does not dispute is a shall-issue scheme.

**B.** *Peterson* **does not conflict with** *Diaz***.**

Comeaux also contends (Pet. 12) that *Peterson* "cannot be reconciled" with this Court's decision in *Diaz*, 116 F.4th at 466, which declined to rely on

7

"Supreme Court dicta" to uphold 18 U.S.C. § 922(g)(1)'s prohibition on firearm possession by felons. *Diaz* discussed the Supreme Court's statement in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." But *Diaz* observed that *Heller* and subsequent cases did not "actually concern[] § 922(g)(1)" and concluded that this Court was required to "conduct[] *Bruen*'s historical inquiry" with respect to "felons in particular." *Diaz*, 116 F.4th at 466.

The panel decision here does not conflict with *Diaz*. *Diaz* determined that *Heller*'s dictum regarding felon-in-possession prohibitions did not excuse it from conducting "*Bruen*'s historical inquiry." *Diaz*, 116 F.4th at 466. But *Peterson* relied on statements *in Bruen itself* about shall-issue regimes, statements that *Bruen* made while conducting a thorough inquiry into the history of restrictions on public carry of firearms. *Peterson*, 161 F.4th at 338. Accordingly, although *Diaz* and *Peterson* reached different conclusions about the need to conduct a full historical inquiry, they involved different statutory provisions and different Supreme Court decisions. The two panel decisions therefore do not conflict.

8

**C.** **Properly understood, *Peterson* does not relieve the government of its burden at *Bruen*'s second step.**

Comeaux also contends that *Peterson* "erected a half-step that inverts *Bruen*'s two-step method" by requiring "a challenger whose conduct is concededly protected at step one" to show that the shall-issue scheme was put toward abusive ends before the court "ask[s] the Government to shoulder its historical burden." Pet. 8-9 (boldface omitted).

At first glance, placing this burden on a challenger seems inconsistent with the two-step analysis announced in *Bruen* and applied in cases like *United States v. Rahimi*, 602 U.S. 680 (2024); *United States v. Hemani*, 608 U.S. ---, 2026 WL 1751710 (2026); and *Wolford v. Lopez*, 609 U.S. ---, 2026 WL 1825723 (2026). The first step of *Bruen*'s analysis asks whether "the law place[s] any restrictions on either the 'keep[ing]' (*i.e.,* possession) or the 'bear[ing]' (*i.e.,* carrying) of arms." *Wolford*, 2026 WL 1825723, at *6. And even shall-issue licensing and registration schemes impose at least *some* "restrictions" on keeping and bearing arms. *Id.* So even a shall-issue regime seemingly implicates the Second Amendment's plain text and shifts the burden to the government to justify the law based on history. *See Bruen*, 597 U.S. at 24.

Nevertheless, *Peterson* did not misapply *Bruen*. First, *Peterson* was entitled to rely on *Bruen*'s footnote 9, which implicitly "rule[d] out" constitutional

challenges to shall-issue schemes where the challenge failed to show "lengthy wait times" or "exorbitant fees." *Bruen*, 597 U.S. at 38 n.9. Where the Supreme Court makes authoritative statements in the context of its own historical analysis, this Court can rely on those statements without redoing the Supreme Court's work.

Second, *Bruen*'s footnote 9 implicitly concluded that non-abusive shall-issue schemes that do not "deny ordinary citizens their right to public carry" are consistent with America's historical tradition.[1] *Bruen*, 597 U.S. at 38 n.9. To be sure, *Bruen* did not explicitly conduct a full historical analysis as to shall-issue schemes. But the Court wrote footnote 9 in the context of its comprehensive historical overview of public-carry restrictions. And because footnote 9 resolved the historical inquiry in favor of non-abusive schemes, putting the burden back on the challenger only makes sense. If a challenger has not even *tried* to establish that the NFA was put toward abusive ends or imposed any unusual burden on his silencer possession, the government will invariably carry its burden of showing the NFA's registration requirement is consistent with the historical tradition.

---

[1] This Court has suggested that *Bruen*'s footnote 9 approved shall-issue licensing schemes under a "Step 1" inquiry. *Comeaux*, 179 F.4th at 302; *see Peterson*, 161 F.4th at 341 n.5. But that footnote is better understood as involving *Bruen*'s second, historical step.

Contrary to Comeaux's contention, the *Bruen* footnote 9 analysis does not "resurrect[] a repudiated form of interest-balancing." Pet. 10 (quoting *Comeaux*, 179 F.4th at 304 (Clement, J., concurring)). For one thing, *Bruen* itself explicitly and repeatedly rejected any form of interest-balancing, *Bruen*, 597 U.S. at 22-23, 26, 29 n.7, making it unlikely that the Supreme Court nevertheless endorsed that very practice in footnote 9. For another, the footnote 9 inquiry considers the same critical questions as *Bruen*'s historical test. If a shall-issue regime is "put toward abusive ends" to "deny ordinary citizens their right to public carry," *id.* at 38 n.9, it is inconsistent with the American tradition in "why" it regulates arms-bearing, *id.* at 29. And if it imposes "lengthy wait times" or "exorbitant fees," *id.* at 38 n.9, it is inconsistent with tradition in "how" it regulates, *id.* at 29. Considering the "why" and "how" of modern regulations vis-à-vis historical regulations is not impermissible interest balancing; it is how courts "apply faithfully the balance struck by the founding generation to modern circumstances." *Id.* at 29 n.7.

## II. Section 5861(d)'s Registration Requirement Is Constitutional Under a Full Historical Analysis.

Even if this Court undertook a full historical analysis, Comeaux would not prevail. Under the NFA, every silencer must be registered to its possessor in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5841. As a condition of registration, the Bureau of Alcohol, Tobacco, Firearms and

Explosives confirms that the transferee is eligible to possess the device under federal, state, and local law. *See* 26 U.S.C. §§ 5812(a), 5822. And, at the time of Comeaux's offense, the person acquiring the silencer was required to pay a $200 tax. 26 U.S.C. § 5811 (1976). Effective January 1, 2026, the tax for silencers and certain other NFA weapons has been reduced to $0. *See* Pub. L. No. 119-21, § 70436(a), (d), 139 Stat. 72, 247-48 (2025).

Our Nation's regulatory tradition shows that the Second Amendment does not guarantee an "unlimited" right "to keep and carry any weapon whatsoever." *Heller*, 554 U.S. at 626. For example, American legislatures have long "prohibited the carrying of 'dangerous and unusual weapons.'" *Bruen*, 597 U.S. at 47; *see Heller*, 554 U.S. at 627. Particularly relevant here, American legislatures have also traditionally imposed special taxes on arms that are especially susceptible to criminal misuse. *See* David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 J. Legis. 223, 227 (2024). For instance, many 19th-century legislatures taxed weapons such as dueling pistols, sword canes, Bowie knives, Arkansas toothpicks, and dirks.[2]

---

[2] *See, e.g.*, Act of June 30, 1837, 1837 Ala. Laws (Called Session) 7; Act of Feb. 10, 1838, 1838 Fla. Laws 36; Act of Feb. 6, 1841, 1841 Miss. Laws 52; Act of Jan. 28, 1851, 1851 N.C. Laws 243; Act of March 2, 1854, 1854 Miss.

The NFA's restrictions on silencers are "'relevantly similar'" to those historical laws in "why" they burden the right to bear arms. *Rahimi*, 602 U.S. at 698 (quotation omitted). Silencers are susceptible to criminal misuse because they make it harder for victims or law enforcement to identify or detect the source and direction of gunfire, such as in drive-by or mass shootings or assassination attempts. This is not to say that silencers are widely used for criminal purposes—their beneficial use is overwhelming in relation to their criminal use, *see Peterson*, 161 F.4th at 335-36—but they do present a niche case for criminal use.[3]

The Act's restrictions on silencers also resemble historical laws in "how" they burden the right to bear arms. *Rahimi*, 602 U.S. at 698. The Act imposes only a minor burden on the right of armed self-defense. It regulates a useful but nonessential firearm accessory, so the burden on the Second Amendment

Laws 50; Act of Dec. 9, 1882, 1882 Ga. Laws 37; Act of May 17, 1886, 1886 Ky. Laws 154; Act of March 27, 1876, 1875-1876 Va. Laws 164.

[3] Because ordinary firearms, unlike silencers, are not peculiarly susceptible to criminal misuse, registration laws or taxes targeting such firearms likely would not serve or be proportionate to any legitimate public-safety purpose. *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("requir[ing] registration of individual guns" generally does not serve any legitimate purpose and is usually "aimed at deterring gun ownership"). In addition, a law regulating or taxing the firearm itself would impose a more severe burden on the right to keep and bear arms than regulations on useful but non-essential accessories such as silencers.

is less severe than a taxation or registration requirement applicable to weapons or essential components themselves.  And the Act does not ban silencer possession; rather, it requires only registration, a background check, and (at the time of Comeaux's offense) payment of a modest tax.  These modest burdens are comparable to the burdens imposed by historical laws taxing weapons that posed a special danger of misuse.

The $200 transfer tax that applied at the time of Comeaux's offense was not "exorbitant," nor did it deny ordinary citizens the ability to possess and use a silencer—much less a firearm.  The $200 fee was generally less than the cost of a silencer itself, which can range from $350 to $1,500.[4]  And the fee is not disproportionate to the licensing fees charged by shall-issue states, which ranged from around $10 to $140 in 2017.[5]  Moreover, the Act does not involve "lengthy wait times."  *Bruen*, 597 U.S. at 38 n.9.  As of June 2026, the average processing times for silencer transfer forms was 6 days for eForms and 31 days for paper.  *See* Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Current Processing Times*, Form 4 Individual, https://www.atf.gov/resource-

---

[4] *See* Silencer Central, *How Much Does a Suppressor Cost?*, https://www.silencercentral.com/blog/how-much-does-a-suppressor-cost/.

[5] *See* Connecticut Office of Legislative Research, *Gun Permit and License Fees* at 3, https://www.cga.ct.gov/2017/rpt/pdf/2017-R-0066.pdf.

center/current-processing-times (last accessed July 20, 2026).  The Act's

requirements are no more burdensome than a variety of other constitutional

regulations, such as the requirements that a firearm purchaser obtain a

background check, *see* 18 U.S.C. § 922(t); or that a person licensed to carry a

firearm undergo safety training and pay a reasonable fee, *see Bruen*, 597 U.S. at

13 & n.1, 38 n.9.  Accordingly, the Act's restrictions on silencers are consistent

with the "principles that underpin [the Nation's] regulatory tradition."  *Rahimi*,

602 U.S. at 692.

## III.    The Panel's Decision Does Not Conflict with Decisions of Other Circuits.

Comeaux contends that the "question" in this case is "entrenched across

the circuits."  Pet. 14 (boldface omitted).  Yet he fails to allege, much less

demonstrate, any *conflict* among the circuits.  In fact, the other circuits to

consider the question have unanimously held that the NFA's registration and

taxation requirements for silencers comply with the Second Amendment.[6]  *See*

*United States v. DeBorba*, 177 F.4th 1005, 1012-13 (9th Cir. 2026); *United States*

---

[6] Two of those decisions concluded, contrary to the panel here, that
silencers are not "arms" and therefore receive no Second Amendment
protection.  *See DeBorba*, 177 F.4th at 1012-13; *Cox*, 906 F.3d at 1186.
Comeaux understandably does not seek rehearing en banc on that question, as
he would not be helped by this Court's aligning itself with those decisions.
And en banc rehearing would not be warranted merely to switch sides in an
existing circuit conflict on a question that does not affect the ultimate outcome
in a constitutional challenge to § 5861(d).

*v. Speed*, 175 F.4th 272, 284-86 (4th Cir. 2026); *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *see also United States v. Miller*, No. 24-3254, 2025 WL 1012727, at \*3-\*4 (6th Cir. Mar. 31, 2025) (unpublished) (rejecting plain-error challenge); *United States v. Schieferle*, No. 23-11792, 2024 WL 1905326, at \*3-\*4 (11th Cir. May 1, 2024) (per curiam) (unpublished) (same). Comeaux cites single-judge opinions in two Fourth Circuit cases, one of which did not even involve the NFA or silencers. Pet. 15 (citing *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 240-43 (4th Cir. 2024) (Richardson, J., dissenting); *Speed*, 175 F.4th at 290-91 (Richardson, J., concurring)). Those opinions cannot establish a circuit conflict. In fact, a ruling in Comeaux's favor would not resolve a circuit conflict but create one. That is not the purpose of en banc review. *See* Fed. R. App. P. 40(b)(2)(C).

## IV.  This Case Is a Poor Vehicle for Further Review.

Even if the question presented otherwise warranted en banc review, this case is a poor vehicle for several reasons. First, Comeaux cannot show that he would prevail under his preferred analysis. As explained above, the NFA's registration requirement imposes only a minimal burden on silencer possession and is consistent with the historical tradition of firearm regulation.

Second, contrary to Comeaux's claim (Pet. 16), this case is not a "better vehicle" than *Peterson* but in fact involves a similarly "thin record." Like the

defendant in *Peterson*, Comeaux has not "allege[d] that he applied for an NFA license to make a suppressor" nor "claim[ed] that the tax or application-processing times discouraged him from submitting an application to the ATF." *Peterson*, 161 F.4th at 340; *see Comeaux*, 179 F.4th at 302 ("Comeaux fails in the same way as did Peterson."). Comeaux responds that he should not be required to make such a showing. Pet. 16-17. But that is simply a merits argument that was already presented in the rehearing petition in *Peterson*, *see* Petition for Rehearing, Doc. 156-1, No. 24-30043 (5th Cir. Sep. 10, 2025); it does not demonstrate that this case is a "better vehicle" than *Peterson*.

Third, although the panel treated Comeaux's as-applied challenge as preserved, 179 F.4th at 299 n.2, the proper standard of review is plain error. *See* Gov't Response Br. 38-40 (Nov. 1, 2024). In the district court, Comeaux made the single, unadorned assertion that § 5861(d) violates the Second Amendment "on [its] face and as applied to him." ROA.31. But all his arguments related to the NFA's facial validity. *See* ROA.32-36. As this Court recently observed, a defendant does not raise an as-applied challenge where his arguments "focus exclusively on whether the government may facially ban" the regulated conduct and "never suggests that the statute is only unconstitutional as applied to his specific conduct." *United States v. Wilson*, 164

F.4th 380, 383 n.7 (5th Cir. 2026). At the very least, the close question about the standard of review makes this a poor vehicle for en banc review.

## CONCLUSION

This Court should deny the petition for rehearing en banc.

Respectfully submitted,

ZACHARY A. KELLER
United States Attorney

A. TYSEN DUVA
Assistant Attorney General

CAMILLE ANN DOMINGUE
Assistant United States Attorney
Western District of Louisiana

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

s/William A. Glaser
WILLIAM A. GLASER
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave, NW, Ste. 1264
Washington, DC 20530
(202) 532-4495
William.Glaser@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1.     This response complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because it contains 3,820 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

2.     This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Calisto MT 14-point type.

s/William A. Glaser<br>
WILLIAM A. GLASER